UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

NORMAN J. BROUSSARD AND                                              PLAINTIFFS
GENEVIEVE BROUSSARD

V.                                              CIVIL ACTION NO. 1:06cv6-LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY                         DEFENDANT

**<u>ORDER</u>**

At the trial of this cause of action, this Court submitted instructions to the jury for it to determine whether punitive damages should be awarded and, if so, in what amount.  After deliberating, the jury returned a [104] verdict in favor of Plaintiffs for punitive damages in the sum of $2,500,000.00.

The Court proceeded in this regard under the authority of Miss. Code Ann. § 11-1-65. With the threshold requirements met, the section of that statute governing the case at this stage provides as follows:

> (f)(i)Before entering judgment for an award of punitive damages the trial court shall ascertain that the award is reasonable in its amount and rationally related to the purpose to punish what occurred giving rise to the award and to deter its repetition by the defendant and others.

> (ii) In determining whether the award is excessive, the court shall take into consideration the following factors:

> 1.  Whether there is a reasonable relationship between the punitive damage award and the harm likely to result from the defendant's conduct as well as the harm that actually occurred;

> 2.  The degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct;

> 3.  The financial condition and net worth of the defendant; and

> 4.  In mitigation, the imposition of criminal sanctions on the defendant for its conduct and the existence of other civil awards against the defendant for the same conduct.

The statute then sets ranges on the amount of punitive damages "[i]n any civil action where an entitlement to punitive damages shall have been established under applicable laws." It is noted that the jury's award in this case falls well within those limits. The concluding clause of the statute reads:

> (4) Nothing in this section shall be construed as creating a right to an award of punitive damages or to limit the duty of the court, or the appellate courts, to scrutinize all punitive damage awards, ensure that all punitive damage awards comply with applicable procedural, evidentiary and constitutional requirements, and to order remittitur where appropriate.

Mindful of this independent duty, the Court now turns to an assessment of the verdict.

In addition to the guidelines of Miss. Code Ann. § 11-1-65, the jury was instructed, consistent with Mississippi case law, that:

> An insurance company such as the Defendant has a duty to its insureds–the Plaintiffs–to conduct a reasonably prompt investigation of all relevant facts and, after conducting such an investigation, make a realistic evaluation of the claim. The Defendant's duty to investigate a claim is a continuing one, and its duty to promptly pay a legitimate claim does not end because a lawsuit has been filed against it for denying it for denying a claim. It may not look for a defense to deny paying an otherwise legitimate claim.

The evidence at trial showed, through the Defendant's own representative (the claims section manager in Mississippi), that during the initial stages of the investigation it appeared that Plaintiffs' home (which was reduced to a slab by Hurricane Katrina) "was more damaged by flood than wind." (Testimony of Terry Blalock at Trial Transcript 129). Despite this initial assessment that wind was a factor in the damage sustained to the insured dwelling, Defendant relied on its flood exclusion to totally deny the claim.

To justify this decision, Defendant adopted a wind/water claim handling protocol that emphasized the exclusion but is at odds with other express terms of the insurance contract. Defendant failed to take into account the coverage afforded under the Plaintiffs' insurance policy for accidental direct physical loss to the dwelling and accidental direct physical loss to their contents caused by windstorm, which Katrina undoubtedly was. This protocol and actions taken thereunder attempted impermissibly to place the burden of proof on the Plaintiffs to establish that their losses were caused by wind rather than what are admitted to be covered accidental direct physical losses (otherwise known as an "all perils" policy in the case of the dwelling and a "named peril" policy as to contents, i.e., windstorm). In slab cases, the wind/water protocol assigned 100% of the loss to flooding unless the policyholder could show "independent windstorm damage" or produce an eyewitness to the destruction. The Defendant did not obtain any expert evaluation on this particular loss. Defendant used the debris line as its sole investigative guide in spite of the probability (as assessed initially) that some damage occurred from a cause other than flood.

Thus, instead of conducting a reasonably prompt investigation of all relevant facts, making a realistic evaluation of the claim (whether as an initial or continuing duty), and shouldering its burden of proof, the Defendant took the extraordinarily troubling position, even with expert reports in hand (obtained well after the lawsuit was filed), that it would rely on the jury to make the determination of the amount to pay the Plaintiffs for their covered losses. (Testimony of Terry Blalock at Trial Transcript 170-71).

This Court remains convinced that a punitive damages instruction and an award of punitive damages are appropriate in this case.  Clear and convincing evidence supports a finding that Defendant acted in such a grossly negligent way as to evince willful, wanton, or reckless disregard for the rights of the Plaintiffs.

As to the amount, the Court not only recognizes the factors established in Miss. Code Ann. § 11-1-65, but is also cognizant of due process considerations under the United States Constitution.  In *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003), the United States Supreme Court reversed and remanded an award of $145 million in punitive damages when the compensatory damages were $1 million. Using the guideposts of *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)–(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases, 538 U.S. at 418, 123 S. Ct. at 1520–the Court observed:

> We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident . . . The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect.  It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence . . . .

538 U.S. at 419, 123 S. Ct. at 1521 (citations omitted).

Furthermore,

> we have been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award . . . . We decline again to impose a bright-line ratio which a punitive damages

award cannot exceed.  Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process . . . .  Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution . . . .

538 U.S. at 424-25, 123 S. Ct. at 1524.

Of course, any final award "must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff."  *Id.*

The devastation caused by Hurricane Katrina created substantial financial vulnerability to Mississippi policyholders insured by the Defendant, especially those whose homes were totally destroyed, of which there are a large number.  The philosophy or attitude or position adopted by the Defendant that lasted throughout the consideration of Plaintiffs' claim is reprehensible enough to warrant deterrence.  What effect it may have remains to be seen, but substantial harm resulted from Defendant's conduct, which was neither isolated nor mere accident.

The amount of punitive damages assessed by the jury in the instant case is almost 12 times the amount of compensatory damages.  Fortunately, Plaintiffs only suffered an economic injury.  It is my determination that a more appropriate punitive assessment against Defendant is the sum of $1,000,000.00, which is between 4 and 5 times the contractual/compensatory damages of $211,222.00.  A remittitur to this amount will be incorporated ultimately in a final judgment.

**SO ORDERED** this the 31st day of January, 2007.

s/ *L. T. Senter, Jr.*

L. T. Senter, Jr.
Senior Judge