UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

NORMAN J. BROUSSARD AND                                                          PLAINTIFFS
GENEVIEVE BROUSSARD

V.                                                                    CIVIL ACTION NO. 1:06cv6-LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY                                              DEFENDANT

## ORDER

This cause of action is before the Court on Defendant's post-trial [118] Motion for Partial Judgment as a Matter of Law and for New Trial. Subsequent to Plaintiffs' [127] Response to this motion, Defendant filed a [130] Motion to Strike a certain portion of Plaintiffs' [128] Memorandum, which Plaintiffs [132] confess. The objectionable material involves matters outside the record; the Court's decision on Defendant's [118] motion is strictly limited to the trial proceedings.

Defendant raises the following grounds in its motion: 1) Plaintiffs failed to make out a prima facie case for recovery of damage to their personal property; 2) the conflicting evidence as to the cause of damage to Plaintiffs' dwelling raised a triable issue of fact; 3) the Court erred in allowing Plaintiffs' expert, James Slider, to testify at trial; 4) the punitive damages assessed were improper and unsupported by the evidence; and 5) Defendant did not receive a trial by a fair and impartial jury.

Plaintiffs counter each ground in the following manner: 1) they proved "windstorm" damage to their personal property and defendant failed to prove that such damage was excluded from coverage; 2) Defendant failed to carry its burden as to the cause of the damage to Plaintiffs' dwelling; 3) Plaintiffs' expert was qualified to testify; 4) the punitive damage instruction and award are supported by Mississippi law; and 5) Defendant's right to an impartial fact-finder was protected.

Defendant's first claim is based on the notion that "Plaintiffs . . . failed to meet their burden of proving that the damage to their personal property was caused by a covered peril and thus . . . failed to establish a prima facie right to recovery under the insurance contract." In further explanation, it is Defendant's position that "[t]o satisfy this burden, Plaintiffs were required to prove both that wind caused the damage to their property *and* the amount of damage caused by wind." [124] at p. 5 (emphasis in original). Finally, Defendant allows that "the parties stipulated merely that Plaintiffs' house and its contents were destroyed *during* Hurricane Katrina, not *by* Hurricane Katrina." *Id*. at 7 (emphasis in original).

The stipulation that the insured property was destroyed during Hurricane Katrina is consistent with all the evidence adduced at trial. Defendant's contention that this was not a stipulation that the insured property was destroyed by Hurricane Katrina seems to me entirely disingenuous. It is patently obvious that the insured property was destroyed by and during this storm. The question of whether the loss of the insured property was caused by the storm was not raised as an issue in the pre-trial order, and there is not even a suggestion of the cause of the loss other than the storm. Advocacy has a proper and necessary role in our system of justice. Yet there may come a point at which advocacy runs the risk of being frivolous, unreasonable, or not consistent with the record. In my opinion, the contention that the insured property was not destroyed by Hurricane Katrina comes perilously close to those points.

Hurricane Katrina was a windstorm by any definition. Indeed, the definition of a hurricane is based on the strength of the winds it generates. Defendant's insurance policy at issue is an all risks policy for the insured dwelling, and for the insured contents windstorm is a named peril. The stipulations in the pre-trial order establish covered losses, and in the absence of any additional evidence Defendant would be legally obligated to pay its coverage for these losses. To avoid that responsibility, Defendant was obliged to prove that the loss was caused by an excluded peril, i.e., flooding. Defendant's expert candidly acknowledged that based upon the data available after the storm–he was not engaged by Defendant until after suit was filed–he could not distinguish between wind damage and water damage with any reasonable degree of probability. Thus, there was no sound evidence upon which the finder of fact could rationally determine that Defendant had met its burden of proof.

Regardless of how Katrina is characterized, the evidence was clear and convincing that Defendant did not conduct a reasonably prompt investigation of all relevant facts before denying the Plaintiffs' claim and, after conducting such an investigation, did not make a realistic evaluation of the claim. Although this duty is a continuing one, Defendant, both before and after the lawsuit was filed, looked for a defense to deny paying any portion of the Plaintiffs' claim. Whether in the form of a wind/water protocol adopted in the wake of Katrina (and despite an initial assessment that Plaintiffs' home was more damaged by flood than wind, i.e., flood was not the exclusive causative agent), or the retention of experts whom it ignored even when the expert testimony confirmed and established the contribution of wind to the loss, Defendant did not have a legitimate or arguable reason for its conduct and for failing to pay any portion of Plaintiffs' claims. Contrary to basic insurance contract law, Defendant resolved every ambiguity in its own favor, and attempted to saddle Plaintiffs with a burden of proof that I have previously ruled is upon the insurer. The Defendant chose to proceed on an all-or-nothing basis, and placed Plaintiffs in a most difficult position during a time of extreme economic hardship. Indeed, Defendant appears to continue to urge an interpretation of its anti-concurrent cause clause that would entitle it to collect premiums from policyholders for what amounts to no coverage if even a small part of a loss was due to water. In sum, a punitive damages instruction was warranted, and the amount (as reduced by the Order docketed at [108] and which is incorporated herein by reference) is appropriate in light of the substantial harm of Defendant's conduct.

Little can be added on the subject of allowing Plaintiffs' expert to testify at trial. The rulings pre-trial [90] and at trial are justified. Defendant's objections to the admissibility of his

opinion goes to its weight, and in any event did not influence the result of this trial.

Finally, as to the issue of the impartial jury, this Court went to great lengths to insure a fair trial.  Daily, at Defendant's request, the Court inquired as to the ability to consider the evidence uninfluenced by media coverage.  The Defendant now complains that the Court did not instruct the jurors at the end of the first day and prior to opening statements to avoid any news coverage, yet it never made this request or raised this objection.  There was no error in this regard.  Once again, there was no impact on the outcome.  However, this does provide the Court an opportunity to observe that in trials held subsequent to the one in the instant case, it has not been difficult to impanel juries, and jurors have shown the ability to consider the evidence with impartial eyes and a thoughtful result.  *Gemmill v. State Farm*, Civil Action No. 1:05cv692.

Accordingly, **IT IS ORDERED**:

Defendant's [118] Motion for Partial Judgment as a Matter of Law or for a New Trial is **DENIED**.

Although the objectionable material raised by Defendant's [130] Motion to Strike was not considered by the Court, and because Plaintiffs [132] have no objection, said motion is **GRANTED**.

**SO ORDERED** this the 11th day of May, 2007.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE